UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**REV. ERROL VICTOR, SR.**                                                                              **CIVIL ACTION**

**VERSUS**                                  **NO. 20-3194**

**WARDEN AL ROBINSON**                       **SECTION: "A"(1)**

**FINDINGS AND RECOMMENDATIONS**

Petitioner, Errol Victor, Sr., a state pretrial detainee, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2241.[1] The matter has been referred to the undersigned United States Magistrate Judge for submission of proposed Findings and Recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).[2] Based on the following findings, it is recommended that the petition be **DISMISSED** for the reasons stated herein.

Although the state court record in this case is voluminous, very little of it is relevant for the purposes of the instant petition. The gist of the matter is this: Petitioner's eight-year-old stepson, M.L. Lloyd, III, died on April 1, 2008. Shortly thereafter, petitioner and his wife were charged in connection with the death. They subsequently absconded from Louisiana and were not located until 2012. They were then returned to Louisiana and trial commenced in July of 2014. Ultimately, petitioner was convicted of second degree murder by a nonunanimous jury and sentenced to a term of life imprisonment without the benefit of parole, probation, or suspension of sentence.[3] The Louisiana Fifth Circuit Court of Appeal then affirmed his conviction and sentence,[4]

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 10.
[3] State Rec., Vol. 23 of 28, trial transcript, p. 5366 (verdict); State Rec., Vol. 23 of 28, transcript of September 15. 2014 (sentencing). Mrs. Victor was convicted of manslaughter by a unanimous jury for her role in the crime, and she currently has pending a separate petition seeking relief pursuant to 28 U.S.C. § 2254: Victor v. Boutte, Civ. Action No. 21-484 "I"(3) (E.D. La.).
[4] State v. Victor, 195 So. 3d 128 (La. App. 5th Cir. 2016); State Rec., Vol. 25 of 28.

and the Louisiana Supreme Court thereafter denied his related writ application[5] and then refused to consider his motion for rehearing.[6]  However, on April 27, 2020, the United States Supreme Court granted his related petition for writ of certiorari, vacated the state court judgment, and ordered that the case be "remanded to the Court of Appeal of Louisiana, Fifth Circuit for further consideration in light of Ramos v. Louisiana, 590 U.S. ——, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020)."[7]  On remand, the Louisiana Fifth Circuit Court of Appeal held:

> Considering that the United States Supreme Court has vacated the judgment in defendant's case because defendant was convicted of a "serious offense" by a non-unanimous jury verdict, and that the instant case is still pending on direct appeal, in compliance with the United States Supreme Court's directive in Ramos, we find that defendant is entitled to a new trial.  Accordingly, in light of the Supreme Court's decision in Ramos, we vacate defendant's conviction and sentence and remand the matter to the trial court for further proceedings consistent with this opinion.[8]

On November 18, 2020, the Louisiana Supreme Court then denied the state's related writ application.[9]

Also in November of 2020, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2241.[10]  In his federal application, petitioner claims: (1) his continued prosecution violates the constitutional protection against double jeopardy;[11] (2) he is being denied his constitutional rights to a speedy trial and to counsel;[12] (3) he is being denied bond in violation of his constitutional rights to due process and equal protection;[13] and (4) he is being

---

[5] State v. Victor, 253 So. 3d 1300 (La. 2018); State Rec., Vol. 25 of 28.
[6] State v. Victor, 263 So. 3d 431 (La. 2019); State Rec., Vol. 25 of 28.
[7] Victor v. Louisiana, 140 S. Ct. 2715 (2020); State Rec., Vol. 27 of 28.  In Ramos, the United States Supreme Court held that the United States Constitution forbids a state court to convict a defendant of a serious crime based on a nonunanimous jury verdict.
[8] State v. Victor, 307 So. 3d 317 (La. App. 5th Cir. 2020) (footnotes omitted); State Rec., Vol. 27 of 28.
[9] State v. Victor, 304 So. 3d 421 (La. 2020); State Rec., Vol. 26 of 28.
[10] Rec. Doc. 1.
[11] Id. at p. 6.
[12] Id. at p. 7.
[13] Id.

2

denied his rights as guaranteed by the "9th Amendment."[14] As relief, he "prays for an <u>immediate expedited release</u>."[15] The state filed an answer to petitioner's application,[16] and he then filed a reply to the state's answer.[17]

In its answer, the state first argues that petitioner failed to exhaust his remedies in the state courts prior to filing this federal application. Regarding the exhaustion requirement applicable in federal habeas corpus proceedings, the United States Supreme Court has observed:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. … [F]ederal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

<u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982) (footnote, citations, quotation marks, and brackets omitted)). As to the specific exhaustion requirement applicable to proceedings brought pursuant 28 U.S.C. § 2241, the United States Fifth Circuit Court of Appeals has explained:

> In discussing exhaustion in the habeas corpus context, we must distinguish between pre-trial and post-trial situations. It is only in the post-trial setting that exhaustion is mandated by statute. <u>Compare</u> 28 U.S.C. § 2254(b) <u>with</u> 28 U.S.C. § 2241(c)(3). Section 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.

<u>Dickerson v. Louisiana</u>, 816 F.2d 220, 225 (5th Cir. 1987) (citations omitted).

---

[14] <u>Id.</u> at p. 8. That amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.
[15] Rec. Doc. 1, p. 8.
[16] Rec. Doc. 15.
[17] Rec. Doc. 17.

Therefore, a § 2241 petitioner clearly is required to exhaust his remedies in the state courts prior to seeking federal relief. For that requirement to have been met, the "petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted). Moreover:

> [A] claim is not exhausted unless the habeas petitioner provides the highest state court with a fair opportunity to pass upon the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper manner according to the rules of the state courts.

Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999) (quotation marks omitted).

In its response in this proceeding, the state argues:

> [T]he claims raised in Petitioner's instant §2241 petition have not been exhausted through the Louisiana Supreme Court in a procedurally proper manner. Specifically, in the only two writ applications filed with the Louisiana Fifth Circuit and pursued through the Louisiana Supreme Court, Petitioner did not raise a "double jeopardy" claim, a "speedy trial" claim, a "due process" claim, or a "9th Amendment" claim. While the factual basis of Petitioner's "double jeopardy" claim appears similar to his state court proceedings, Petitioner never mentioned or argued a violation of the Fifth Amendment right against "double jeopardy" in the state court proceedings, which were based upon an alleged violation of Louisiana criminal procedural law. In addition, Petitioner's "due process" claim alleging a Fourteenth Amendment violation due to the denial of bail suffers the same flaw as the "double jeopardy" claim. This is because, in his state court proceedings, Petitioner did not allege or challenge the denial of bail on constitutional grounds; rather, Petitioner only challenged the denial of bail based upon the applicable Louisiana criminal procedural provisions governing bail determinations.[18]

In support of that argument, the state points this Court to the Louisiana Fifth Circuit Court of Appeal's opinions in the two relevant cases, i.e. case numbers 20-K-159 and 20-K-174. However, the content of a state court's **opinion** simply is not determinative when a federal court is considering an exhaustion defense, because a state court does not necessarily discuss **all** claims and arguments that are raised by the parties. See Johnson v. Williams, 568 U.S. 289, 298-301 (2013). Therefore, in determining whether a petitioner has exhausted his claims, a federal court

---

[18] Rec. Doc. 15, p. 6.

must examine the contents of a petitioner's **underlying filings** to determine whether he raised his claims in the state courts. That presents a problem in this case.

Here, the state court record submitted to this federal court, although extensive, appears to be the record maintained only by the state **district** court; it does not appear to also include the **complete** records that were before the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court. Although the provided record contains some portions of those superior state courts' records, it does not appear to contain the underlying writ applications filed with those courts. Without having the opportunity to review those writ applications, this Court declines to resolve this case based on the state's assertion of the exhaustion defense. However, it is unnecessary for the Court to resolve the exhaustion issue because petitioner's application alternatively fails for other fundamental reasons, as explained below.[19]

By filing this federal application, petitioner is inviting this federal court to interfere in his **ongoing** state criminal proceedings. However, federal courts generally decline such invitations except in special circumstances. The United States Supreme Court has opined:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted.

Younger v. Harris, 401 U.S. 37, 43-44 (1971).

---

[19] Because the exhaustion requirement is not jurisdictional, a federal court may simply pretermit the exhaustion issue and deny a habeas application on other grounds. See, e.g., Marshall v. Tanner, 651 F. App'x 254, 255 (5th Cir. 2016).

To that end, state pretrial detainees are strictly limited in the types of claims they may assert and the types of relief they may seek under 28 U.S.C. § 2241.  For example, the United States Fifth Circuit Court of Appeals has held:

> The [United States Supreme] Court in Braden [v. 30th Judicial District Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973),] … reiterated the long established principle "that federal habeas corpus does not lie, absent 'special circumstances', **to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction** by a state court."  Braden, 410 U.S. at 489, 93 S.Ct. at 1127.  The Court also stated that "nothing we have said would permit the derailing of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court."  Id. at 493, 93 S.Ct. at 1129.  **The Court's discussion indicates that there is a distinction between a petitioner who seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes"** by litigating a speedy trial defense to a prosecution prior to trial, **and one who seeks only to enforce the state's obligation to bring him promptly to trial.**  Brown [v. Estelle,] 530 F.2d [1280,] 1283 [(5th Cir. 1976)].  In Brown we stated that this distinction turns upon the type of relief sought:
>
>> [A]n attempt to dismiss an indictment or otherwise prevent a prosecution is of the first type, while an attempt to force the state to go to trial is of the second.  While the former objective is normally not attainable through federal habeas corpus, the latter is, although the requirement of exhaustion of state remedies still must be met.
>
> Brown, 530 F.2d at 1283.

Dickerson, 816 F.2d at 226 (emphasis added).

As noted, in this action, petitioner is not seeking an order that the state bring him to trial more expeditiously; rather, he is seeking immediate release.  He is clearly attempting to derail – not simply "jump-start" – the state court proceedings.  That is generally not permitted.

That said, an exception to the foregoing general rule is potentially relevant here.  Among petitioner's claims is one alleging a **double jeopardy** violation, and double jeopardy claims are recognized as one of the few types of claims that may properly be raised in a pretrial § 2241 petition.  See, e.g., Fain v. Duff, 488 F.2d 218, 224 (5th Cir. 1973) ("Although double jeopardy (if

shown) would certainly be a proper defense to assert at trial and in postconviction proceedings, the right consists of more than having the second conviction set aside.  It consists of being protected from having to undergo the rigors and dangers of a second – illegal – trial.  Double jeopardy is not a mere defense to a criminal charge; it is a right to be free from a second *prosecution*, not merely a second *punishment* for the same offense (though that is obviously included in the right.)  … Here, it is not an affirmative obligation [petitioner] seeks to enforce, it is a prohibition.  But just as in the case of speedy trial, the right is one which can and should be vindicated without waiting until the state decides to conduct a trial.  For [petitioner], it is the right to be left alone which he seeks to enforce against the [government]."); see also Robinson v. Wade, 686 F.2d 298, 303 n.8 (5th Cir. 1982) ("Because the double jeopardy clause protects against multiple prosecutions, as well as multiple convictions and punishments, … its infringement cannot adequately be remedied by post-conviction review."); Brian R. Means, Postconviction Remedies § 23:18 (July 2020 Update).  Nevertheless, even if petitioner's double jeopardy claim is cognizable, and even if it is exhausted, it nevertheless still fails because it is patently meritless.

The United States Supreme Court has explained:  "Jeopardy attaches when 'a defendant is "put to trial,"' and in a jury trial, that is 'when a jury is empaneled and sworn.'"  Martinez v. Illinois, 572 U.S. 833, 839-40 (2014) (quoting Serfass v. United States, 420 U.S. 377, 388 (1975)). During petitioner's prosecution in state court, a jury was "empaneled and sworn" **on only one occasion**, i.e. the jury trial which commenced in July of 2014.  As noted, that trial resulted in a nonunanimous jury convicting petitioner of second degree murder.  However, as also noted, **that conviction was subsequently vacated** based on the United States Supreme Court's decision in Ramos.

7

To the extent that petitioner is arguing that double jeopardy now bars his retrial, he is clearly wrong.  "It has long been settled … that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction."  Lockhart v. Nelson, 488 U.S. 33, 38 (1988).  Any suggestion that this general rule would be inapplicable to convictions vacated due a Ramos violation not only finds no support in the jurisprudence resulting from Ramos, but it is also contrary to Ramos itself.  In Ramos, the Supreme Court expressly acknowledged that those prisoners who were being afforded relief as a result of the decision would still face continued prosecution.  See, e.g., Ramos, 140 S. Ct. at 1406 ("[T]he number of nonunanimous felony convictions still on direct appeal are somewhere in the hundreds, and **retrying or plea bargaining these cases** will surely impose a cost.  But new rules of criminal procedures usually do, often affecting significant numbers of pending cases across the whole country." (emphasis added; footnote omitted)).  Even more recently, in holding Ramos does not apply retroactively to cases on federal collateral review, the United States Supreme Court noted that a contrary rule would impose significant burdens on the states in having to **retry those prisoners**:

> [A]pplying Ramos retroactively would potentially overturn decades of convictions obtained in reliance on Apodaca [v. Oregon, 406 U.S. 404 (1972)].  Moreover, **conducting scores of retrials** years after the crimes occurred would require significant state resources.  And a State may not be able to retry some defendants at all because of lost evidence, faulty memory, and missing witnesses.  When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims.  Even when the evidence can be reassembled, **conducting retrials** years later inflicts substantial pain on crime victims who must testify again and endure new trials.  In this case, the victims of the robberies, kidnappings, and rapes would have to relive their trauma and testify again, 15 years after the crimes occurred.
>         Put simply, the costs imposed upon the States by retroactive application of new rules of constitutional law on habeas corpus thus generally far outweigh the

benefits of this application. For that reason, the Court has repeatedly stated that new rules of criminal procedure ordinarily do not apply retroactively on federal collateral review.

Edwards v. Vannoy, 141 S. Ct. 1547, 1554-55 (2021) (emphasis added; citations and quotation marks omitted)).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Errol Victor, Sr., be **DISMISSED** and that all of his related motions, Rec. Docs. 12,[20] 13,[21] 16,[22] and 18,[23] be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this __28th__ day of May, 2021.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] "Motion to Be Put in Federal Protective Custody Until Matters Before This Court is Res Adjudicated, 'Expeditious Consideration' Ex Parte."
[21] "Motion to Add Indispensable Respondents, Defendants as Parties."
[22] "Motion for an Emergency Temporary Restraining Order and/or Preliminary Injunction."
[23] "Motion to Adopt."
[24] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.